## J. H. McCAIN, EXR., v. S. M. PEART, EXR.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF ARMSTRONG COUNTY.

Argued October 12, 1891—Decided November 9, 1891.

(a) Brice gave to Gilpin a judgment note to secure any sums that Gilpin had previously advanced or might thereafter advance to Brice, or for his use. Judgment thereon having been entered, and both parties having died, an issue was framed between their executors to determine how much if anything was due upon the judgment:

Statement of Facts.

1. It seems, that checks and receipts, showing the payment by Gilpin to, Brice, or for his use, of various sums of money, both before and after the date of the judgment note, but not specifying on what account they were paid, were insufficient, unaccompanied by other evidence, to establish an indebtedness of Brice to Gilpin.

2. But, such checks and receipts having been admitted as evidence of plaintiff's claim, defendant had a right to show that, prior to the making of said payments, Brice deposited moneys in Gilpin's hands for investment or safe keeping, and it was then for the jury to say whether the payments by Gilpin to Brice were not made on account of such deposits.

3. When an attorney-at-law, receiving from time to time moneys of his client, for investment, enters their receipt and also his payments to the client in a continuous book-account, kept by him for that purpose, the statute of limitations has no application to such account, while it continues running and unsettled.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 79 October Term 1891, Sup. Ct.; court below, No. 315 December Term 1885, C. P.

On December 3, 1885, judgment was entered in the court below in favor of James H. McCain, executor of John Gilpin, deceased, for $7,095.37, upon a note under seal signed by Peter P. Brice, bearing date January 23, 1880, at one day after date, containing a warrant of attorney to confess judgment. Subsequently, Peter P. Brice having died, and his executor, S. M. Peart, having been substituted as defendant, the court, on petition filed, granted a rule to open the judgment which was made absolute after hearing; whereupon, issue was joined upon the pleas of set-off, defalcation, payment, and payment with leave.

At the trial, on January 12, 1891, the plaintiff having put in evidence the judgment note above mentioned, the defendant put in evidence the following paper:

" John Gilpin of Kittanning borough has at sundry times loaned or advanced to me divers sums of money, sometimes by giving to me his checks for which I gave him no receipts and upon which I received from the bank the money, sometimes in cash for which I merely gave him receipts, and sometimes in cash for which I gave him notes. He has also paid to Harriet Brice divers sums of money for me. Now, for the

purpose of securing to the said Gilpin the re-payment of all of said sums of money, as well as for any sums he may hereafter advance or loan to me, I have given him my judgment note dated this day for the sum of five thousand dollars, which said note is to be held by him as security. Witness my hand and seal this 23 January, 1880.          PETER P. BRICE."

"The above note is received with the above conditions.

"JOHN GILPIN."

The plaintiff then put in evidence various checks and receipts showing the payment by John Gilpin to Peter P. Brice, and to other persons for his use, of various sums of money at different times from 1870 to 1883, aggregating about $1,600. The plaintiff resting, the defendant offered receipts and testimony tending to show that at various times between 1870 and 1883, Brice deposited with Gilpin for investment, sums of money exceeding in the aggregate the payments shown to have been made by Gilpin to Brice, and that, at the date of the note in suit, Gilpin had thus received a greater amount of money than the total of said payments. The nature of the proofs so offered by the defendant is more fully stated in the opinion of the Supreme Court. Among the receipts from Gilpin to Brice offered in evidence, were the following:

Mr. Peart: We offer receipt, 2d April, 1873, of Peter P. Brice: "Received 2d April, 1873, of Peter P. Brice, $800, to be by him invested at ten per cent per annum." Signed J. GILPIN.

Mr. Leason: It is objected to, for the reason that it is a loan, a separate and distinct obligation for the payment of money, is barred by the statute of limitations, and is irrelevant and incompetent.

Mr. Peart: We offer receipt; "Received 2d April, 1873, of Peter P. Brice, $200 on deposit," and signed, J. GILPIN.

Having proved the ledger of John Gilpin, deceased, containing an account with Brice, kept in Gilpin's own handwriting, the defendant made the following offer:

"We now offer this book and items down to April 9, 1873, for the purpose of showing the application of the item of April 2, 1873, $200; and also the item of April 2, 1873, $800; and April 9, 1873, $18; for the purpose of showing that Mr. Gilpin applied these items to the credit of Peter P. Brice."

Statement of Facts.

Page 111 of the ledger, referred to in the offer, was as follows:

PETER P. BRICE.

| 1871. | | Dr. | Cr. |
|---|---|---|---|
| (In pencil marks) | | 94 67 | 701 92 |
| Apl. 17, To cash per recpt., . . . . . | | 200 00 | |
| 27, By cash from Skinner for recording mortgage, . . . . . . | | | 2 30 |
| June 28, To cash pd E. S. Golden for Harriet Brice, . . . . . | | 133 25 | |
| 1872. | | | |
| Jan'y 22, " " " " | | 56 19 | |
| Feb'y 28, By cash . . . . . . | | | 79 77 |
| Apr. 9, To cash dep. in Security Trust Co., | | 313 58 | |
| 25, Cash from Wm. Pollock, . . . | | | 18 00 |
| Oct. 2, By cash from Peter Paul, . . . | | | 18 00 |
| " By cash, . . . . . . . | | | 6 00 |
| Dec. 11, To cash pd Golden, (in pencil marks, 723.52 \| 124.07), . . . . | | 20 50 | |
| (In pencil marks) | | 818 19 | 831 99 |
| 1873. | | | |
| Apl. 2, By cash to be deposited, . . . | | | 200 00 |
| 2, By cash to be invested, . . . | | | 800 00 |
| 9, By int. from Peter Paul, . . . | | | 18 00 |

Mr. Leason: This piece of the account offered is objected to. The offer as a whole shows no application of the funds, and I may add that the receipt, offered in the first place by the defendant, discloses that the items contained in that account were independent loans, made to John Gilpin.

By the court: We cannot see the importance of this offer. Upon the face of the books, so far, there has been nothing disclosed to show the application of the money received to the receipts and checks offered in evidence, and we think no fair inference of such an application could be drawn from the book, and the offer is therefore refused; exception.[6]

Mr. Patton: We now offer this ledger, page 111, item, April 27th, by cash recording mortgage, $2.30, and in connection with it we offer the diary of Mr. Gilpin of Thursday, April 27, 1871, "Recording Skinner mortgage, $2.30."

By the court: What is the purpose?

Mr. Patton: We offer this to show the receipt of Mr. Gilpin of $2.30 for Mr. Brice, and the crediting of it to the account of Peter P. Brice.

Statement of Facts.

Mr. Leason: We object to that as essentially a set-off and barred by the statute of limitations.

By the court: We think we have passed on this. So far as you can show the application of this to the receipts and checks offered on the other side we admit them, but as independent items we do not see how they can be admitted. There would be no difficulty if you show an entry by John Gilpin, and then connect it with a fund that came into his hands of Peter Brice [5]; exception.[8]

Other pages of the ledger, containing the remainder of the account with Brice, completed after his death by transferring to it entries found in Gilpin's diaries, were offered in evidence. The nature of that part of the account and the balances exhibited thereby are stated in the opinion of the Supreme Court.

The defendant offered in evidence the deposition of E. S. Golden, taken under a rule, to the effect that the witness was attorney for Harriet Brice, who was interested in the estate of Robert Brice deceased, and John Gilpin was acting as attorney for Peter P. Brice; that Gilpin told the witness that Brice had offered to pay into court, about 1871, a certain sum of money that belonged to the estate of Robert Brice, but the court refused to allow this to be done, and Brice had left the money with Gilpin, who was to have it ready to bring into court when this should be ordered, or, if the court would not receive it, then to make interest on it if he could for Brice; and that Gilpin paid witness, for Harriet Brice, $20.50 a year for a good many years.

In response to an inquiry of plaintiff's counsel, the purpose of the foregoing offer was stated to be, to show the manner in which Mr. Gilpin conducted the business of Mr. Brice, and to show in what capacity he acted.

Mr. Leason: It is objected to for the purposes for which it is offered; there has been nothing disclosed in the case to render it relevant or competent testimony.

By the court: We deem it very immaterial now, and we will sustain the objection; exception.[12]

Mr. Patton: We offer receipt dated December 10, 1870, Peter Brice, executor of Robert Brice, deceased, $613, etc., "if not called for to bear interest from date; signed J. Gilpin."

Mr. Leason: The offer is objected to because on its face it

Charge of Court below.

is a loan; it is barred by the statute of limitations. The issue tried is a judgment opened. As a set-off it is irrelevant, because it is a claim arising in another's right, viz., it is trust money in the hands of Peter P. Brice, executor of Robert Brice; the defendant in this case is Peter P. Brice, and it is therefore incompetent and irrelevant.

The offer did not appear to have been specifically ruled upon.

W. N. McCravey testified for the defendant that on March 1, 1881, the witness went to Gilpin's office with Brice, and the latter, after getting seventy-five dollars from Gilpin, asked him for a settlement; that Gilpin told him to come back at another time, and said that Brice had a good bit of money with him yet, and could get it whenever he wanted it. The witness testified, further, that Gilpin had been Brice's attorney for a number of years and continued to be such until the death of the former.

Charles Nichols testified, under exception, for the defendant, that in September, 1873, the witness went with Peter Brice to the office of Mr. Gilpin, where he paid one thousand one hundred and fifty dollars to Brice, who handed it over to Gilpin, telling the latter to take charge of it for him; that in April of 1874, 1875 and 1876, the witness made payments of money to Brice at Gilpin's office, paying two hundred and fifty dollars each time, and on each of those occasions Brice handed the money to Gilpin, telling him to take care of it, or keep it with the rest of his money.

At the close of the case, plaintiff's counsel moved to strike out the testimony of Charles Nichols.

By the court: Motion granted, and testimony is stricken out and withdrawn from the consideration of the jury; exception.[13]

The testimony being closed, the court, DOTY, P. J. 10th district, specially presiding, charged the jury in part as follows:

The defendant requests the court to charge:

1. That, under all the evidence in this case, the statute of limitations is no bar to the set-off offered in evidence by the defendant.

Answer: This point is refused.[1]

2. If the jury believe from the evidence that John Gilpin was the attorney of Peter P. Brice, from 1868 to the time of his (Gilpin's) death, November 3, 1883, and that the business

Charge of Court below.

in which Gilpin was concerned for Brice was continuous and undisposed of at the time of Gilpin's death, the statute of limitations would not bar the defendant from setting off money paid into Gilpin's hands as his attorney in such continuous business.

Answer: We have, already, during the progress of the case, passed upon the proposition herein contained, and excluded any evidence that would appear to be referred to in the proposition.[2]

3. If the jury believe from the evidence that Brice paid money to Gilpin, his attorney, and that Gilpin, the attorney, misled his client, and by concealment of the facts led him to believe that the money left with him would be applied to the payment of Brice's debts, and to the payments due to Harriet Brice, the said Gilpin cannot now set up the bar of the statute.

Answer: We see no evidence in this case which would justify submitting to you as a question of fact whether there had been fraud or concealment on the part of John Gilpin; and the proposition, so far as applicable under the evidence in the case, is refused.[3]

4. That if the jury believe from the evidence that Brice left money with Gilpin on deposit, the statute of limitations would not run on money so left until after demand made.

Answer: As an abstract proposition of law, this point is good; but there has been no evidence admitted of any such deposits.[4]

7. That the books of John Gilpin, offered in evidence, show credits of April 2, 1873, $200, and April 2, 1873, $800, to P. P. Brice, and are evidence to go to the jury as an admission of John Gilpin that he had credited said items to the individual account of Peter Brice.

Answer: We have already ruled out the offers embracing items referred to in this point. This proposition is refused.[5]

9. That the defendant has shown by the books of Mr. Gilpin and in the handwriting of Mr. Gilpin, that Peter P. Brice paid him, from 1869 to April 9, 1873, the sum of $1,855.99; and defendant has also shown that Chas. Nichols paid to Gilpin for the use of Brice, $1,150 in September, 1873; $250 in April, 1874; $250 in April, 1875; and $250 in April, 1876; and if the jury believe from the evidence that this was the money

Charge of Court below.

paid out by Gilpin, as shown by the receipts offered in evidence on the part of the plaintiff, and that said Gilpin did not advance or pay any other money to or for Peter Brice, then the plaintiff cannot recover.

Answer: These items have already been excluded by the direction of the court, together with the testimony of Mr. Nichols, and are not properly to be considered by you.[7]

To enable the jury to determine the amount of the liability upon this note, the plaintiff has introduced in evidence various receipts and checks, receipts signed by Peter P. Brice and checks drawn to his order and by him indorsed, and without going into detail, these aggregate, according to the additions given the court, the sum of $1,615.45. . . . .

The defendant, upon the other hand, has shown that, so far as some of these receipts are concerned, they were paid out of a certain fund that was contributed by Brice himself to John Gilpin. These are not offered, as I understand it, as independent items of set-off to this judgment, but for the purpose of showing that the items claimed, viz.: $409.94, were not in the contemplation of the parties at the time this agreement was entered into, and for the purpose and with that end in view, they were admitted as evidence. It would be proper for the jury, if you believe this testimony, which is not denied upon the part of the plaintiff, to allow a credit for the sum of $409.94, thus reducing the claim to $1,205.51. Objection was also made to the three sums of $20.50 each, making $61.50; and in the face of this objection these sums were withdrawn, and the sum of $1,144.01 is what remains. This appears to be the whole case as far as testimony has been introduced. . . . .

You will consider all receipts and checks and the payments made by Mr. Gilpin to Mr. Brice, and you will consider all payments under the evidence which has been introduced by the defendant. Deduct these payments from the payments made by the plaintiff, and render a verdict for the difference in these amounts.

—The jury having returned a verdict which does not appear to have been made a matter of record, but was stated in appellant's paper-book to have been, in effect, a finding that Gilpin had received from Brice more money than he had paid out on Brice's account, the court charged the jury, further, in part as follows:

Charge of Court below.

Gentlemen of the jury, we think you must have misapprehended the charge of the court. [The verdict in its present shape we cannot accept.] [11] There was evidence which was admitted which showed the expenditure of considerable sums of money by John Gilpin for the benefit of Peter Brice. On the other hand, there was evidence on the part of the defendant that certain of these receipts amounting to $409.94, as we recollect it, were out of moneys already paid into the hands of Gilpin by Peter P. Brice. [There was no contradiction of the evidence introduced on the part of the plaintiff except the sum of $409.94.] [10] This evidence was passed upon by the court. These receipts and checks to the order of Brice and the other evidence, or a greater part of it, were admitted without objection on the part of the defendant, and they showed clearly the expenditure of a considerable sum of money on the part of Gilpin. . . . .

[We are clearly of the opinion that under the evidence as introduced, the plaintiff has shown that he was entitled to a verdict at your hands; and the evidence, as we have said, is uncontradicted. There were considerable payments made by him in pursuance of that contract, and that would aggregate something like $1,615.45. Now, as to these items, there was no dispute in the evidence, and it was admitted what the plaintiff contended for in that regard, that he had paid out $1,615.45. On the other hand, the defendant has shown that he was entitled to a credit of $409.94; that would leave $1,205.51. In addition to the credits we have already mentioned, there were three items of $20.50, making $61.50, which were finally withdrawn from the plaintiff's claim. It is unfortunate, of course, that the original parties are dead, and thereby difficulties come into the case. We therefore instruct you to render a verdict based upon the lines we have indicated.] [9] If the court made an error in excluding evidence, that is a matter that can be corrected otherwise. The difficulty about this verdict is, that it does not decide anything.

—The jury returned a verdict for the plaintiff for $1,492.93. Judgment having been entered, the defendant took this appeal, assigning for error:

1–5. The answers to defendant's points. [1 to 5]

6, 8. The refusal of defendant's offers. [6] [8]

7. The answer to defendant's point.[7]

9–11. The parts of the charge embraced in [ ] [9 to 11]

12. The refusal of defendant's offer.[12]

13. The striking out of the testimony of Charles Nichols.[13]

*Mr. W. D. Patton* (with him *Mr. W. L. Peart*), for the appellant.

*Mr. M. F. Leason*, for the appellee.

OPINION, MR. JUSTICE GREEN:

The learned court below very properly held that the judgment note given by Brice to Gilpin, and the contemporaneous paper signed by Brice and Gilpin, must be regarded as one transaction, and that, thus regarded, the former was a mere security for moneys which had been or might be loaned to or paid for Brice. Viewed in that light, the judgment note was in no sense the real cause of action of Gilpin against Brice; and, if no proof had been given for the plaintiff of moneys loaned to or paid for Brice, the plaintiff could have recovered nothing against the defendant, although he held the judgment note of the latter for five thousand dollars. The plaintiff accordingly, and by plain necessity, undertook to establish a real cause of action against the defendant, by giving in evidence proof of numerous items of cash paid to or for the defendant at various times from the year 1868 to 1883. The most of the items were in small sums paid out at various times, principally between the years 1871 and 1881. There were a very few items after 1881. The largest items were from 1871 to 1873. The means of proof were chiefly checks given by Gilpin to Brice, and there were some, but not many, receipts for money signed by Brice. Whether these receipts expressed anything more than the fact that money was paid by Gilpin to Brice, we do not know, as they are not printed, and we are not acquainted with their contents. All the offers of proof made by the plaintiff, practically were admitted in evidence against the defendant to make out the allegation that moneys were loaned to or paid for Brice by Gilpin. Whether that kind of proof is evidence of indebtedness by the payee to the payer depends upon circumstances. Ordinarily, the mere fact of such pay-

ments, unsupported by any other evidence, proves rather the payment of indebtedness by the payer to the payee than the creation of indebtedness by the payee to the payer. But it is not necessary to consider the subject in that aspect, in the peculiar circumstances of this case.

The learned court below, having admitted the proofs above described to make out the plaintiff's real and only cause of action, was asked to admit various offers of proof by the defendant to the effect that, at the very times when all the payments by Gilpin to Brice were made, Gilpin was indebted to Brice for moneys which Brice had previously deposited with or paid to Gilpin. The proofs of these deposits and payments were of the most conclusive and incontestable character. They consisted of receipts signed by Gilpin, which expressly stated that they were for money received on deposit, or to be invested for Brice at interest, or to be held subject to Brice's order; and the direct testimony of witnesses who were present and saw money paid by Brice to Gilpin, who agreed to take care of it for Brice ; and of entries made in Gilpin's own cash-book and ledger, in an account which he there kept with Brice, and in which Brice was credited with numerous items of money which he had paid to Gilpin. The entries of the largest of these items, covering the time from 1871 to 1873, and amounting to nearly two thousand dollars, were made by Gilpin himself in his own handwriting, and all the rest were made from entries in his diaries. This account was balanced from time to time, and showed on its face that Gilpin was at all times indebted to Brice, instead of Brice being indebted to Gilpin, and a large number of the very items which the plaintiff was permitted to recover a verdict for, appear in that account as being payments to Brice, simply in reduction of the items of cash credited on the same account as having been received by Gilpin from Brice.

That account on the books of Gilpin commenced by a credit to Brice of $701.92 in 1871, and was followed by other credits for cash received from Brice down to September 13, 1873, all of them in Gilpin's own handwriting, and making a total of credits of almost one thousand nine hundred dollars, and during that time all the payments made by Gilpin to or for Brice amounted to only $818.19. The account was balanced on November 21, 1873, and the balance due to Brice at that date on Gilpin's

ledger account was $1,075.40. That balance was never paid, and Gilpin at all times remained a debtor to Brice to the end of the account. It was balanced again on September 3, 1879, and again showed a balance to the credit of Brice of $310.40, and that balance was never paid. The account, carried down to the end in 1883, still showed a balance in favor of Brice, although not a single dollar of interest was credited to Brice, and although there was other proof of the payment of very considerable sums by Brice to Gilpin which were never credited to Brice on Gilpin's books. It happens that very nearly, if not quite all the payments made by Gilpin to Brice, which make up the present claim of the plaintiff, are the very payments which are credited to Brice on Gilpin's books, and which are there charged against and in payment of the debt which Gilpin owed to Brice according to his own account. On Gilpin's books these very items for which the court below not only permitted, but peremptorily directed, a most unwilling jury to return a verdict for the plaintiff, are simply items which go in reduction of Gilpin's debt to Brice. Thus the account charges Gilpin with a balance of $1,075.40 in favor of Brice on November 21, 1873, and then reduces that balance by the very payments which largely make up the present verdict, to $310.40, on September 3, 1879. It has now resulted, by the verdict of a jury, that while the plaintiff's own books of account show that the plaintiff is in reality a debtor to the defendant, the defendant is declared to be a debtor to the plaintiff in the sum of $1,492.93 on January 13, 1891. One of the receipts given by Gilpin to Brice was on December 10, 1870, for $613.25, and the receipt says it is " to bear interest from date." No interest on that sum was ever credited to Brice, and it amounted at the time of this verdict to over seven hundred and thirty dollars. Another item of cash received from Brice, and credited by Gilpin in his own account, is eight hundred dollars, on April 2, 1873, and is credited thus: " By cash to be invested." The interest on this sum at the time of the verdict was just about nine hundred dollars. Not a penny of this interest was credited on the account; and it thus appears by Gilpin's own account that the interest alone which he was apparently bound to pay amounted to almost one thousand six hundred dollars on two items alone, and was more than enough to cover every

item of payment made by Gilpin to Brice. This leaves out of view entirely all the other payments to Gilpin by Brice and which are credited on Gilpin's books, and also the large sums proved to have been paid and which do not appear to be credited.

It may well be asked how such a result as the verdict in this case could be accomplished in a court of justice. On the trial, when the defendant's proofs were offered in evidence, the learned court below was of the opinion that the statute of limitations was a bar to all items more than six years old, and also that there was no evidence to show the application of the credits to Brice on Gilpin's books to the checks and receipts given in evidence against Brice, and therefore rejected the offers. These rulings are founded upon an entire misconception of the operation of the statute of limitations in such a case, and also upon a most erroneous view of the entries in Gilpin's books. Specifically and directly those entries do show the application by Gilpin of the debits charged against Brice to the payment of Brice's credits charged against Gilpin. The same account, and on the same book, shows Brice creditor from April, 1871, to December 11, 1872, in amounts aggregating $831.99, and debtor in amounts aggregating $818.19; and yet for some of those very debit items, although extinguished by Gilpin himself on his own books, a verdict has now been recorded against Brice by the process of excluding his credit items. But that is not the worst aspect of the account. The credit items immediately following, and in Gilpin's own handwriting, are, April 2, 1873, " By cash to be deposited, $200 ; " and same date, " By cash to be invested, $800 ; " and the account, with four more items of credit, and only one of debit, is closed by deducting the aggregate of the previous debits, $818.19, and one more debit charge of $16.38, from the aggregate of credit items, $1,909.97, and leaving a balance of $1,075.40 to the credit of Brice on November 21, 1873. And yet, the court below refused to allow the defendant to show this state of facts.

It is simply impossible for us to assent to any such view of the case, or to permit so grave an error to prevail. As a matter of course, the account, on its face, does show the very thing which the court below said it did not show, to wit, the application by Gilpin himself of Brice's debits to Gilpin, to the

extinguishment of Gilpin's debits to Brice. For the admissibility of these entries in evidence it is not at all necessary that they should be so specific and precise. The entries made by Gilpin, or appearing on his books, are declarations against his interest, and are competent and highly persuasive testimony against the present claim. For that reason alone they should have been received. They are contemporaneous with the items of charge against Brice, sought to be recovered in the present case, and tend to show indebtedness by Gilpin to Brice, and for that reason alone they are admissible in evidence; and it is for the jury, and not at all for the court, to say whether they relate to the present demand.

As for the statute of limitations, it has nothing whatever to do with the case, and for different reasons. The account is a continuous and running account, alleged to be, and proof given to show that it was, between attorney and client, never settled by the attorney, and as such the statute has no application: McCoon v. Galbraith, 29 Pa. 293. But, for a still more potential reason, it could not possibly operate as a bar to Brice's claim against Gilpin; and that is, that the items of charge against Brice were immediately appropriated by Gilpin to pay his own indebtedness to Brice, as fully appears by the entries in his own books. But, in any event, even without these entries, the defendant having offered to prove, by receipts signed by Gilpin, that, prior to any of the payments of money by Gilpin to Brice, Gilpin had received money from Brice, it was exclusively for the jury, and not in any sense for the court, to say whether those payments by Gilpin to Brice were not payments of indebtedness to Brice, and therefore, the defendant's offers of proof should have been received. The great majority of the payments by Gilpin to Brice were proved simply by checks for small sums payable to order. There was no proof that they were loans of money. There was abundance of proof outside the book-entries that Gilpin had received, and continued to receive money from Brice on deposit, or to invest it for him, or to take care of it. The court had no right to say, as a matter of law, that the checks from Gilpin to Brice were for moneys loaned or advanced, and then refuse to permit the defendant to prove that there was indebtedness from Gilpin to Brice both before and concurrently with the giving

Opinion of the Court.

of the checks.   All these facts were solely for the jury to hear
and decide; and then to reject these offers to prove such in-
debtedness, on the ground that the statute of limitations was
a bar, was a most serious error.   It is as if a debtor should
borrow a thousand dollars from his creditor, and then, during
seventeen succeeding years, should pay his creditor sixty dol-
lars annually by check payable to order, and at the end of the
period should sue his creditor for the whole one thousand and
twenty dollars thus paid ; and, when the creditor offered to
prove that prior to any of these payments he had loaned the
debtor a thousand dollars, he should be told by the court that
such proof could not be received, because the claim would be
barred by the statute.   And so the unfortunate creditor would,
by this method, not only lose his debt, but would have a judg-
ment recovered against him for one thousand and twenty dol-
lars by the peremptory direction of a court who would not
permit a jury to inquire whether the payments were not pay-
ments of interest only, each one of which would be a fresh
recognition of the debt.

Upon a careful examination of the assignments of error, we
are clearly of opinion that we must sustain, as we do, the first,
second, third, sixth, eighth, twelfth and thirteenth assignments.
There was no reason why the testimony of Mr. Golden should
be rejected, and there was every reason why it should be re-
ceived.   The striking out of the testimony of Charles Nichols
was the gravest error.   He proved in the most precise and
positive manner the payment by Brice to Gilpin of one thou-
sand one hundred and fifty dollars in September, 1873 ; of two
hundred and fifty dollars on April 1, 1874 ; and of two hun-
dred and fifty dollars in April, 1875 ; and another payment of
two hundred and fifty dollars, the date of which is not given ;
but the payments amounted in all to one thousand nine hun-
dred dollars, and he also testified that Gilpin offered to take
care of it for Brice.   The testimony was received and was be-
fore the jury, and most distinctly showed an indebtedness by
Gilpin to Brice ; but at the end of the trial, for some unex-
plained reason, it was all ruled out.   Had the defendant's
offers of testimony been received, as they should have been,
we would also have sustained the fourth, fifth, seventh, ninth
and tenth assignments, but, the evidence of the matters covered

by these assignments having been rejected, the questions could not arise.

Judgment reversed, and venire de novo awarded.